**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 20 2000**

**PATRICK FISHER**
**Clerk**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA

    Plaintiff-Appellee,

v.

    No. 99-6258

ANTHONY DEWAYNE HISHAW

    Defendant-Appellant.

---

Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. CR-98-128-A)

---

Beverly Quarles Watts, Watts & Watts, Oklahoma City, Oklahoma, for Defendant-
Appellant.

Leslie M. Maye, Assistant United States Attorney, Western District of Oklahoma (Daniel
G. Webber, Jr., United States Attorney, with her on the brief), for Plaintiff-Appellee.

---

Before **SEYMOUR**, Chief Judge, **KELLY**, and **HENRY**, Circuit Judges.

---

**HENRY**, Circuit Judge.

---

A jury convicted Anthony Dewayne Hishaw of knowingly possessing a handgun after a felony conviction, a violation of 18 U.S.C. § 922(g)(1), and possessing crack cocaine with the intent to distribute it, a violation of 21 U.S.C. § 841(a)(1). The district court sentenced him to concurrent terms of imprisonment of 120 and 360 months, followed by three and five-year terms of supervised release.

Mr. Hishaw now advances the following arguments: (1) that the district court erred in denying his motion to suppress evidence discovered by the police during a June 27, 1998, traffic stop; (2) that the evidence was insufficient to support his § 922(g)(1) conviction; (3) that the government failed to prove beyond a reasonable doubt the quantity of cocaine that he possessed, as required by the Supreme Court's recent decision in Apprendi v. New Jersey, 120 S. Ct. 2348 (2000); and (4) that, by relying at sentencing on drug transactions of which he was not convicted, the district court erred in determining the quantity of drugs for he could be held responsible. For the reasons set forth below, we conclude that the district court properly denied Mr. Hishaw's motion to suppress and properly determined drug quantities at sentencing. However, we agree with Mr. Hishaw that the evidence presented to the jury was insufficient to support his § 922(g)(1) conviction.

## I. BACKGROUND

On the evening of June 27, 1998, Oklahoma City police officers Jarred Elliot and

2

Michael Kelley observed an automobile straddling a lane line on a city street. After the officers stopped the car, Officer Elliot walked toward the driver's side, while Sergeant Kelley walked toward the passenger's side.

When Officer Elliot tapped on the glass, Mr. Hishaw rolled down the window and threw an object out of the car. Officer Elliot smelled burning marijuana, noticed what appeared to be a marijuana cigarette on the ground, and placed Mr. Hishaw under arrest. Sergeant Kelley ordered the passenger out of the car and observed what appeared to be another marijuana cigarette between the driver's and passenger's seats. After Sergeant Kelley placed the passenger under arrest, the two officers conducted an inventory search of the car. Sergeant Kelley discovered a Norinco nine-millimeter semiautomatic pistol under the passenger's seat. Subsequently, Mr. Hishaw was charged in state court with possession of marijuana and released on bond.

On the afternoon of July 10, 1998, Oklahoma City police officers observed Mr. Hishaw as they conducted surveillance outside an apartment for which they had obtained a search warrant. The officers had received information that the apartment was used to distribute drugs, and the affidavit in support of the warrant named Mr. Hishaw as a suspected drug dealer. Oklahoma City police officer Steve Bennett testified that, over a four-hour period on that afternoon, he noticed Mr. Hishaw entering and leaving the apartment numerous times. Outside the apartment, Officer Bennett observed Mr. Hishaw "dealing with several individuals . . . in the parking lot." Rec. vol. II, at 17 (Tr. of Sept.

28, 1998, Hr'g on Defendant's Motion to Suppress). Officer Bennett could not tell if Mr. Hishaw was shaking hands, but he observed "a lot of contact." Id. at 18. Based on these observations, as well as the information he had received about Mr. Hishaw's prior involvement in distributing drugs, Officer Bennett suspected that Mr. Hishaw was distributing drugs.

At about 5:00 p.m., Mr. Hishaw left the apartment complex in a pickup truck driven by Kendric Watson. According to Oklahoma City police officer Mark McCaleb, the pickup truck straddled the lane line for about a block. Officer McCaleb instructed Sergeant Richard Alvarado to stop the pickup.

Sergeant Alvarado followed Officer McCaleb's instructions. He stopped the pickup truck, directed Mr. Hishaw and Mr. Watson to get out, and conducted pat-down searches of both men. Sergeant Alvarado felt two hard objects in Mr. Hishaw's crotch and asked him for permission to retrieve them. Mr. Hishaw agreed, and Sergeant Alvarado discovered what he believed to be several large rocks of crack cocaine. The government offered expert testimony at trial indicating that the suspected substance had tested positive for cocaine base. In trial testimony, Mr. Hishaw admitted that the substance was crack cocaine.

In August 1998, a federal grand jury returned an eight-count indictment against Mr. Hishaw. Three of the counts charged him with distributing cocaine base (in November and December 1995). Four other counts charged him with possessing cocaine

4

base with the intent to distribute it. A final count charged him with the June 27, 1998, possession of a firearm after a former felony conviction.

Prior to trial, Mr. Hishaw filed a motion to suppress the crack cocaine discovered by Sergeant Alvarado on July 10, 1998. He argued that the stop of the pickup and subsequent pat-down search violated the Fourth Amendment because the officers lacked a a reasonable suspicion of either a traffic violation or the commission of a drug offense.

After conducting an evidentiary hearing, the district court denied Mr. Hishaw's motion. Although it acknowledged that Sergeant Alvarado lacked a reasonable suspicion of a violation of the traffic laws, the court concluded that the officers' information about Mr. Hishaw's distributing drugs provided sufficient justification for the stop:

> We have credible testimony that there was a reasonable identification of the defendant, Anthony Hishaw, as the person in the . . . apartment [for which the officers had a search warrant]. We have a reasonable basis for [the] officers to seek a warrant that contraband and weapons are in that apartment. Under circumstances where a search is impending, the case law is pretty clear, I think, that the officers don't have to just sit outside and watch people come and go . . . . It's quite proper for the officers to make inquiry of people leaving premises, which premises are under a search warrant, shortly before the warrant's execution. Otherwise, there would be just total porosity in the warrant.

> Now, that in itself justifies the stop . . . . There are two processes in the stop: [s]afety factors, and then a brief investigation. In the nature of things, the safety factors have to be taken care of first; and given information about this particular defendant, the officers were very reasonable in a brief pat-down. And in the pat-down, there was discovery of whatever object was in the trousers of the defendant; and given the

5

> circumstances of recent departure from the premises which were the subject of the warrant; the officers were fully entitled to move on and find out what that was.

Id. at 168-69.

At trial, the government presented evidence from police officers concerning the drug distribution scheme in which Mr. Hishaw was allegedly involved. It also offered testimony from witnesses who stated that they had purchased crack cocaine from him. In response, Mr. Hishaw testified in his own defense. He admitted that he had been previously convicted of a felony. He further admitted that he had possessed crack cocaine on July 10, 1998. However, he denied that he had distributed or possessed crack cocaine in the other instances alleged in the indictment and also denied that he knew that there was an automatic pistol under the passenger's seat of the car he was driving on the evening of June, 27, 1998.

After hearing the parties' evidence, the jury was unable to reach a verdict on six of the eight counts. However, the jury found Mr. Hishaw guilty of the 18 U.S.C. § 922(g)(1) violation for possessing a firearm after conviction of a felony (charged in count seven) and the 21 U.S.C. § 841(a)(1) violation for possessing cocaine with the intent to distribute on July 10, 1998 (charged in count eight).

The presentence report concluded that Mr. Hishaw should be held responsible for the distribution of 1857 grams of cocaine. It relied, in part, on evidence that the government had presented at trial concerning Mr. Hishaw's possession and distribution of

6

cocaine from 1995 through 1997.  The report also relied on Mr. Hishaw's admission at trial that he had obtained crack from a previously unnamed source, see Rec. vol. VIII, at ¶ 30, and on information from a confidential informant that Mr. Hishaw and his brother had distributed crack cocaine in the early part of 1995.

Mr. Hishaw objected to the inclusion of drug quantities beyond what he had admitted possessing on July 10, 1998.  At sentencing, the government presented several witnesses in support of its contention that Mr. Hishaw should be held responsible for the 1857-gram amount. The court then overruled Mr. Hishaw's objections to the drug quantity determinations.

## II  DISCUSSION

### A.  Motion to Suppress

Mr. Hishaw first challenges the district court's denial of his motion to suppress. He maintains that the Oklahoma City police officers lacked the necessary justification to make a traffic stop and also lacked a reasonable suspicion that he was engaging in the illegal distribution of drugs.  We engage in de novo review of the district court's conclusion that the stop of the pickup and the pat-down search of Mr. Hishaw were reasonable under the Fourth Amendment.  See United States v. Hernandez, 93 F.3d 1493, 1498 (10th Cir. 1996).  We view the record in the light most favorable to the government and accept the district court's factual findings unless they are clearly erroneous.  See United States v. Gordon, 173 F.3d 761, 765 (10th Cir. 1999).

7

The Supreme Court has identified three general types of encounters between citizens and the police: (1) consensual encounters; (2) investigative detentions; and (3) arrests. See United States v. Davis, 94 F.3d 1465, 1468 (10th Cir. 1996) (discussing types of encounters and citing Supreme Court cases). Although consensual encounters do not implicate the Fourth Amendment, there is an extensive body of case law establishing limitations on police officer's discretion to effect investigative detentions and arrests. See id., 94 F.3d at 1468 (discussing requirements for detentions and arrests). Investigation detentions must be supported by a reasonable suspicion of criminal activity while arrests, "the most intrusive of Fourth Amendment seizures," must be supported by probable cause. Id.

Here, Mr. Hishaw and the government agree that Sergeant Alvarado's stop of the pickup in which Mr. Hishaw was riding constituted an investigative detention for which reasonable suspicion was required. In order to determine whether the detention was reasonable, we consider "whether the officer's action was justified at its inception" and "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry v. Ohio, 392 U.S. 1, 20 (1968). "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21.

As we have noted, the Oklahoma City police officers initially offered two

justifications for the stop of the pickup: the commission of a traffic violation (straddling the lane line) and the suspicion that Mr. Hishaw was distributing drugs. The district court rejected the first justification, and the government has not challenged that ruling. Thus, the question before us is whether the district court properly concluded that the officers had a reasonable suspicion that Mr. Hishaw was distributing drugs and, if so, whether Sergeant Alvarado's pat-down search constituted an intrusion "reasonably related in scope to the circumstances which justified the interference in the first place." Id. at 20.

In challenging the evidence of drug activity, Mr. Hishaw notes that "no officer ever observed [him] engaged in any illegal activity during the many hours of surveillance." Aplt's Br. at 16. Although it is true that the officers observing Mr. Hishaw outside the apartment were unable to see him distributing drugs, such an observation was not necessary in order to establish reasonable suspicion. As we have noted, "even ambiguous behavior, susceptible to an innocent interpretation, may give rise to a reasonable suspicion of criminal activity depending on the totality of the circumstances." Oliver v. Woods, 209 F.3d 1179, 1188 (10th Cir. 2000) (citing Terry, 392 U.S. at 22-23); see also Terry, 392 U.S. at 22 (acknowledging that "a series of acts, each of them perhaps innocent in itself, [may] warrant[] further investigation").

Here, the totality of the circumstances provided sufficient justification for the stop. At the hearing on the motion to suppress, Officer Bennett testified that he had received information from two confidential informants (one of whom he was using for the first

9

time and the other of whom had previously provided reliable information) that an Oklahoma City apartment was being used to distribute drugs. Based on communications with the informants, Officer Bennett named Mr. Hishaw in the search warrant. Mr. Hishaw has not challenged the reliability of this information. Additionally, after obtaining the warrant, Officer Bennett observed Mr. Hishaw making hand-to-hand contact with several individuals outside the apartment Based on his experience, he concluded that Mr. Hishaw was engaged in distributing drugs. Cf. United States v. Gutierrez-Daniez, 131 F.3d 939, 942 (10th Cir. 1997) (stating that an officer "'is entitled to assess the facts in light of his experience' in detecting criminal activity") (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 885 (1975)). Based on the totality of these circumstances, we conclude that the officers possessed the reasonable suspicion necessary to effect an investigative detention of Mr. Hishaw as he left the apartment in the pickup.

Even though the initial stop was justified, we must still assess the reasonableness of the subsequent pat-down search. In order to comport with the Fourth Amendment, that search must have been "reasonably related in scope" to the basis for the stop (i.e., the officers' suspicion that Mr. Hishaw was distributing drugs). See Terry, 392 U.S. at 20. In that regard, this circuit has concluded that an officer may conduct a pat-down search (or "frisk") if he or she "harbors an articulable and reasonable suspicion that the person is armed and dangerous." Davis, 94 F.3d at 1468; see also United States v. Duncan, 131

10

F.3d 894, 898 (10th Cir. 1997) (concluding that officers had a reasonable suspicion that the defendant was engaged in on-going criminal activity and therefore could order him to get out of car and conduct a pat-down search).

Here, the evidence supporting the officers' reasonable suspicion that Mr. Hishaw was distributing drugs (i.e. his coming and going from the apartment named in the search warrant and the hand-to-hand contact observed outside the apartment) also indicated that he might be armed and dangerous. See United States v. Shareef, 100 F.3d 1491, 1502 (10th Cir. 1996) (holding that, during an investigatory detention, officers are authorized to take such steps as are reasonably necessary to protect their personal safety and to maintain the status quo); see also United States v. Sakyi, 160 F.3d 164, 169 (4th Cir. 1998) (holding that "when the officer has a reasonable suspicion that illegal drugs are in the vehicle, the officer may, in the absence of factors allaying his safety concerns, order the occupants out of the vehicle and pat them down briefly for weapons to ensure the officer's safety and the safety of others"); United States v. Perrin, 45 F.3d 869, 873 (4th Cir. 1995) (noting that "it is certainly reasonable for an officer to believe that a person engaged in the selling of crack cocaine may be carrying a weapon for protection"); United States v. Anderson, 859 F.2d 1171, 1177 (3d Cir. 1988) (concluding that an officer's pat-down search of the occupants of a car was reasonable after the officer observed large amounts of money on the front seat, became suspicious that it might be drug money, and was concerned for his safety "because persons involved with drugs often carry

11

weapons").  Thus, the district court properly denied Mr. Hishaw's motion to suppress the cocaine discovered by Sergeant Alvarado during the July 10, 1998, pat-down search of Mr. Hishaw.

### B.  Section 922(g)(1) conviction

Mr. Hishaw contends that the evidence was insufficient to support his conviction for possessing a firearm after conviction of a felony, a violation of 18 U.S.C. § 922(g)(1). In order to prove a § 922(g)(1) violation, the government must establish the following elements beyond a reasonable doubt: (1) that the defendant was previously convicted of a felony; (2) that the defendant thereafter knowingly possessed a firearm; and (3) that the possession was in or affecting interstate commerce.  See United States v. Taylor, 113 F.3d 1136, 1144 (10th Cir. 1997).  Mr. Hishaw focuses on the second element, arguing that the government failed to prove beyond a reasonable doubt that he knowingly possessed the Norinco nine-millimeter semiautomatic pistol that police officers discovered under the passenger's seat of the car driven by Mr. Hishaw on June 27, 1998.   In assessing that argument, we view the record in the light most favorable to the government. See United States v. Mills, 29 F.3d 545, 549 (10th Cir. 1994).  Evidence is sufficient to support a conviction if, in light of the direct and circumstantial evidence presented, a reasonable jury could find the defendant guilty beyond a reasonable doubt.  See id.

12

Under § 922(g)(1), possession may be actual or constructive. See id.; United States v. Cardenas, 864 F.2d 1528, 1533 (10th Cir. 1989). Here, there is no evidence that Mr. Hishaw actually possessed the handgun, and the government thus argues that he had constructive possession. It notes that a witness testified that Mr. Hishaw had possessed a semiautomatic pistol on several previous occasions when he had sold cocaine. The government also maintains Mr. Hishaw's possession of marijuana supports an inference of constructive possession. See Aple's Br. at 13 (contending that "there is a strong indication, and undoubtedly an inferential basis[,] that drug traffickers and drug users often possess firearms").

In order to establish that constructive possession, the government must demonstrate that Mr. Hishaw "knowingly [held] ownership, dominion, or control over the object and the premises where it is found." Mills, 29 F.3d at 549 (citing United States v. Hager, 969 F.2d 883, 888 (10th Cir. 1992)). Circumstantial evidence may establish constructive possession. See id. In most cases, the defendant's dominion, control, and knowledge may be inferred if he had exclusive possession of the premises on which the object was found. See id. However, this circuit has held that joint occupancy alone cannot sustain the inference of dominion, control and knowledge. See id. (citing United States v. Sullivan, 919 F.2d 1403, 1431 (10th Cir. 1990)). Thus, in cases of joint occupancy in which the government relies on circumstantial evidence of dominion, control, and knowledge, "it must present evidence to show some connection or nexus

13

between the defendant and the firearm or other contraband." Id. There must be some evidence "'supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband.'" Id. at 550 (quoting United States v. Mergerson, 4 F.3d 337, 349 (5th Cir. 1993)).

Applying those principles, this circuit has deemed the government's evidence insufficient to establish constructive possession in a variety of circumstances. For example, in Mills we concluded that a defendant's handling of guns (in cooperation with law enforcement officials) six days before the charged § 922(g)(1) offense did not establish that he constructively possessed the guns that officers had discovered in a compartment in a dining room table in a house that he jointly occupied with his daughter. Standing alone, the defendant's dominion and control over the dining room was insufficient. See Mills, 29 F.3d at 549-50. Similarly, in United States v. Reece, 86 F.3d 994, 996 (10th Cir. 1996), we concluded that the evidence of constructive possession was insufficient when the narcotics were discovered in the pockets of a passenger in a car that the defendant was driving. We reasoned that "[b]ecause constructive possession requires a nexus between the defendant and the contraband where there is more than one possibility as to who is in possession of that contraband, mere dominion over the vehicle and proximity to the contraband will not satisfy the possession element." Id.; see also United States v. Taylor, 113 F.3d 1136, 1145 (10th Cir. 1997) (concluding that evidence of constructive possession was insufficient when the defendant jointly occupied an

14

apartment in which a handgun was discovered and when a government witness's testimony that the defendant had possessed it "on one or two occasions" provided only a vague description of the gun and the date on which she saw him with it).

This approach had been followed in other circuits. In instances of joint occupancy in which the government fails to demonstrate a nexus between the defendant and the contraband, they have concluded that the government's evidence of constructive possession was insufficient. See, e.g., United States v. Blue, 957 F.2d 106, 107-08 (4th Cir. 1992) (rejecting the government's contention that the defendant constructively possessed a pistol underneath his seat when the only evidence of a nexus was an officer's testimony that the defendant dipped his shoulder as the officer approached ); United States v. Kelso, 942 F.2d 680, 681-82 (9th Cir. 1991) (rejecting government's argument, offered in support of a sentencing enhancement, that the defendant passenger constructively possessed a gun discovered behind the driver's seat because "[a]lthough [the defendant] may have had access to the gun, there is no evidence he owned it, or even was aware of its presence"); United States v. Whitfield, 629 F.2d 136, 142-43 (D.C. Cir. 1980) (finding evidence sufficient that the defendant driver, who owned the car, constructively possessed pistols under the driver's and passenger's seats but holding that the evidence was insufficient as to the defendant passenger); cf. United States v. Wight, 968 F.2d 1393,1396 (1st Cir. 1992) (concluding that there was sufficient evidence that the defendant constructively possessed a pistol discovered behind the front seats of a van in

15

which he was a passenger when the government presented testimony that the pistol had been taken to the defendant's residence on the preceding day and that the defendant was in charge of the impeding drug transaction).

In this case, we agree with Mr. Hishaw that the evidence presented by the government at trial was insufficient for a reasonable jury to conclude that he constructively possessed the semiautomatic pistol found in the car he was driving on June 27, 1998. In his trial testimony, Mr. Hishaw stated that the car belonged to a friend of his brother. The government presented no evidence to rebut this statement or to show the extent of his dominion and control over the car. As to Mr. Hishaw's possession of a semiautomatic pistol on prior occasions, we agree with the government that, in certain instances, such evidence may support an inference of constructive possession. Here, however, the evidence on which the government relies is simply too remote and too vague to support the inference that Mr. Hishaw constructively possessed the pistol. See Taylor, 113 F.3d at 1145 (concluding that evidence of prior possession was too vague to support an inference of constructive possession).

In particular, the trial testimony regarding Mr. Hishaw's prior possession of a semiautomatic pistol came from Anthony Watkins, who stated that he had purchased crack cocaine from Mr. Hishaw during a three-month period from December 1995 through February 1996. Mr. Watkins reported that he observed a semiautomatic pistol on a kitchen table during a drug transaction with Mr. Hishaw. He added that he had seen Mr.

16

Hishaw with some kind of firearm—either a pistol or a revolver—on about four prior occasions. Thus, the government's evidence of Mr. Hishaw's actual possession of a firearm involved incidents more than two years before the charged § 922(g)(1) offense. Moreover, the incidents described by Mr. Watkins differed from what Officers Elliot and Kelley observed on June 27, 1998: in contrast to those prior incidents, no evidence was presented to the jury that Mr. Hishaw was involved in distributing crack cocaine when the officers stopped the car.

Moreover, the cases on which the government relies do not support an inference of constructive possession. In United States v Miller, 84 F.3d 1244, 1256 (10th Cir. 1996), overrruled on other grounds by, United States v. Holland, 116 F.3d 1353 (10th Cir. 1997), we acknowledged the general principle that "drugs and guns often go together." However, we added that this "general principle, standing alone, would [not] allow a jury to conclude beyond a reasonable doubt that [the defendant, a passenger in the front seat of a van,] was aware there were firearms in either of the bags [discovered in the rear of a van], without evidence that one or both of the bags belonged to him, that he packed either or both of the bags, or any other evidence individually linking him to the firearms." Id. In United States v. Nicholson, 983 F.2d 983, 990 (10th Cir. 1993), we stated that "[d]rug traffickers may carry weapons to protect their merchandise, their cash receipts, and to intimidate prospective purchasers." However, constructive possession was not an issue: the defendant acknowledged that he carried the firearm in question but argued that he had

17

done so for personal protection rather than to facilitate the alleged drug conspiracy. See

id. We merely concluded that it was reasonable for the jury to have rejected that

contention and concluded that the firearm was used to facilitate a drug transaction. Thus,

neither of these decisions supports the government's contention that a jury could

reasonably infer from Mr. Hishaw's possession of marijuana on June 27, 1998, and his

prior possession of cocaine that he "knowingly [held] ownership, dominion, or control

over [the pistol]." Mills, 29 F.3d at 549.

Accordingly, we conclude that the evidence presented to the jury was insufficient

to support Mr. Hishaw's § 922(g)(1) conviction.[1]

_____

[1] We note that the district court ultimately concluded that Mr. Hishaw had testified falsely at trial by denying that he knew about the pistol discovered in the car on June 27, 1998. The court relied on that finding, as well as findings that Mr. Hishaw had testified falsely about other matters, to impose a sentencing enhancement for obstruction of justice.

With regard to the pistol, the district court's sentencing finding was based on evidence that was not presented to the jury. In particular, Steven Laster, Mr. Hishaw's cousin and the passenger in the car driven by Mr. Hishaw, testified at the sentencing hearing that the pistol had been given to Mr. Hishaw by a friend earlier in the evening of June 27, 1998. He stated that the friend had handed the pistol to Mr. Hishaw, who then had handed it to Mr. Laster.

In light of this testimony that was not heard by the jury, as well as the fact that the government's burden of proving a sentencing enhancement is a mere preponderance of the evidence, the district court's findings do not undermine our conclusion that the evidence presented to the jury was insufficient to support Mr. Hishaw's § 922(g)(1) conviction. See United States v. Moore, 55 F.3d 1500, 1501 (10th Cir. 1995) (applying the preponderance of the evidence standard to the government's allegations in support of a sentencing enhancement).

## C.  Determination of Drug Quantity

Mr. Hishaw also argues that, by considering drug transactions of which he was not convicted, the district court erred in determining the quantity of drugs for which Mr. Hishaw could be held responsible in calculating his sentence.  During the pendency of this appeal, the Supreme Court decided Apprendi v. New Jersey, 120 S. Ct. 2348 (2000), a case which arguably affects the manner in which the district court may determine drug quantities.  We asked for supplemental briefing on the applicability of that case.

Invoking Apprendi, Mr. Hishaw now advances an additional argument.  He asserted that the government failed to prove to the jury beyond a reasonable doubt a fact that affected his sentence:  the quantity of cocaine that he possessed with the intent to distribute on July 10, 1998 (the offense alleged in count eight of the indictment).  In light of Apprendi, Mr. Hishaw maintains that the government violated his due process rights. We will first address Mr.  Hishaw's Apprendi argument.  Because his other sentencing argument (regarding the use of drug quantities involved in transactions of which he was not convicted) affects our analysis of the Apprendi issue, we will address it in that context.

In the district court proceedings, Mr. Hishaw did not challenge the evidence at to the quantity of cocaine he possessed on June 10, 1998.  Accordingly, in assessing his Apprendi argument, we review the record for plain error.  See Fed. R. Civ. P. 52. Reversal is only warranted if there is: (1) an error;  (2) that is plain or obvious; (3) affects

19

substantial rights; and (3) "seriously affect[s] the fairness, integrity[,] or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732 (1993) (internal quotation marks omitted).

In Apprendi, the defendant pleaded guilty to possession of a firearm for an unlawful purpose, a second-degree offense under New Jersey law, punishable by a term of imprisonment of five to ten years. A separate statute provided for a term of imprisonment of ten to twenty years if the trial judge found, by a preponderance of the evidence, that "[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation[,] or ethnicity." Apprendi, 120 S. Ct. at 2351 (quoting N. J. Stat. Ann. § 2C:44-3(e)). The Supreme Court held that the New Jersey statute violated the Due Process Clause of the Fourteenth Amendment by allowing the sentencing judge to make a finding of discrimination by a preponderance of the evidence, thereby increasing the defendant's sentence over the maximum established by the general statute concerning second-degree offenses. The Court stated, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 2362-63. (emphasis added).

In this case, 21 U.S.C. § 841 establishes the maximum sentence for Mr. Hishaw's conviction for the offense charged in count eight of the indictment: possessing cocaine

on July 10, 1998, with the intent to distribute it. The statute provides that a defendant who has possessed more than fifty grams of a mixture or substance containing cocaine base "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life." 21 U.S.C. § 841(b)(1)(A). For lesser quantities, the statute provides for lower sentences. See, e.g., 21 U.S.C. § 841(b)(1)(B) (providing, in part, for a sentence of not less than five years and not more than forty years for defendants who possess with intent to distribute five grams or more of a mixture containing cocaine base).

In light of these provisions, several of our sister have concluded that the Apprendi requirements apply to § 841(b). See United States v. Angle, Nos. 96-4662, 96-4672, 99-4187, 2000 WL 1515159, at *10 (4th Cir. Oct 12, 2000) ("Pursuant to Apprendi, in order for imprisonment penalties under § 841(b)(1)(A) or (B) to apply to the defendants, such that findings of particular drug quantities could expose them to imprisonment terms greater than § 841(b)(1)(C)'s catch-all statutory maximum of twenty years, the drug quantity must be treated as an element: charged in the indictment, submitted to a jury, and proven to beyond a reasonable doubt."); United States v. Doggett, No. 99-50380, 2000 WL 1481160, at * 3 (5th Cir. Oct. 6, 2000) ("We conclude that there is no reasonable construction of § 841 that would allow us to avoid the broad constitutional rule of Apprendi. Notwithstanding prior precedent of this circuit and the Supreme Court that Congress did not intend drug quantity to be an element of the crime under 21 U.S.C. §§

21

841 and 846, we are constrained by <u>Apprendi</u> to find in the opposite."); <u>United States v. Rebmann</u>, 226 F.3d 521, 524-25 (6th Cir. 2000) (concluding that, when the defendant had waived the right to a jury trial, the determination under § 841 of whether the distribution of drugs caused death or serious bodily injury must be made by the judge as a factfinder under the beyond a reasonable doubt standard); <u>United States v. Nordby</u>, 225 F.3d 1053, 1059 (9th Cir. 2000) (rejecting the argument that § 841 contains "no prescribed statutory maximum" and concluding that the district court erred in sentencing the defendant "without submitting the question of marijuana quantity to the jury and without a finding that the marijuana quantity had been proved beyond a reasonable doubt"). We agree with the reasoning of these decisions and conclude that, under § 841(b)(1), the quantity of drugs is a fact that may "increase[] the penalty for a crime beyond the prescribed statutory maximum" and therefore "must be submitted to a jury, and proved beyond a reasonable doubt." <u>Apprendi</u>, 120 S. Ct. 2362-63.

In this case, count eight of the indictment alleges that, on July 10, 1998, Mr. Hishaw "did knowingly and intentionally possess with intent to distribute <u>approximately two (2) ounces of cocaine base</u> (crack), a Schedule II controlled substance." Rec. doc. I, at 4. (emphasis added). Two ounces of cocaine base equals 56.7 grams, an amount that triggers the 10 years to life sentencing provisions set forth in 21 U.S.C. § 841(b)(1)(A).[2]

_____

[2] As the government's expert witness on forensic chemistry testified at trial, one ounce equals 28.35 grams. <u>See</u> Rec. vol. III, at 314.

Nevertheless, the term "approximately 2 ounces" could be just as plausibly read to include an amount under fifty grams. For example, 1.6 or 1.7 ounces could be viewed as "approximately two ounces" but would be under fifty grams and would thus trigger a lower maximum sentence under the statutory scheme. See 21 U.S.C. § 841(b)(1)(B) (authorizing a term of imprisonment from five to forty years for the possession of more than five grams of a substance containing cocaine base). Moreover, there is no indication that the jury made specific findings as to drug quantity. In light of the indictment's ambiguous allegation as to the quantity of cocaine base involved, and because of Apprendi, we conclude that the failure to require specific findings regarding the quantity of cocaine constitutes a "plain or obvious" error. See United States v. Garcia-Guizar, No. 99-10435, 2000 WL 1346233, at *3 (9th Cir. Sept. 20, 2000) (concluding that the judge's issuance of findings that increased the statutory maximum constituted an obvious error, satisfying the first two prongs of the Olano standard); see also Johnson v United States, 520 U.S. 461, 468 (1997) ("[I]n a case . . . where the law at the time of trial was settled and clearly contrary to the law at the time of appeal— it is enough that an error be "plain at the time of appellate consideration").

We now turn to the third prong of the plain error analysis: whether the error affected Mr. Hishaw's substantial rights. Here, the government maintains that Mr. Hishaw rights were not affected because he admitted that he possessed more than fifty grams of cocaine. Upon review of record, we disagree with the government: Mr.

23

Hishaw's admission demonstrated to the jury that he possessed a quantity less than fifty grams. Nevertheless, we conclude that Mr. Hishaw was not prejudiced by the failure to require of finding of a specific drug quantity from the jury. We reach that conclusion by considering the government's evidence at trial, the terms of Mr. Hishaw's admission, the sentencing provisions of § 841(b), and the case law concerning the consideration of drug quantities beyond the offense of conviction.

At trial, the government's evidence of drug quantity came from a forensic chemist with the Oklahoma City Police Department. He described two sandwich bags found in Mr. Hishaw's possession on July 10, 1998. One of the sandwich bags contained three smaller baggies and the other contained four. According to the chemist, each of the seven baggies contained a caked substance that tested positive for cocaine base and that weighed the following amounts: 5.5 grams, 6.4 grams, 6.5 grams, 6.5 grams, 6.5 grams, 6.5 grams, and 6.7 grams. The total weight of the substances identified by the chemist was thus 44.6 grams—less than the fifty-gram amount required to trigger the ten-years-to-life sentencing provisions of § 841(b)(1)(A). Rec. vol. III, at 312-17 (testimony of Matthew Scott).

Mr. Hishaw's admission that he possessed cocaine base on July 10, 1998, occurred after the chemist's testimony, during Mr. Hishaw's direct examination by his trial counsel. Mr. Hishaw's counsel asked, "What do you say about . . . Count Eight, that occurrence on July the Tenth?" Mr. Hishaw responded, "Yes . . . . That's mine. . . . I

24

accept my responsibility for that." Rec. vol. IV, at 508. At trial, there was no subsequent discussion regarding the amount possessed by Mr. Hishaw

In light of the terms of the indictment and the government's trial evidence about the quantity possessed by Mr. Hishaw, we cannot read Mr. Hishaw's admission as establishing that he possessed more than fifty grams of a substance containing cocaine base. Because the government's evidence established possession of only 44.6 grams, Mr. Hishaw's "accept[ance] [of] responsibility" for the cocaine base alleged in count eight, cannot be viewed as an admission that he possessed more than that amount.

Even so, 21 U.S.C. § 841(b)(1)(B) provides that a defendant, like Mr. Hishaw, who possessed more than five grams of a substance containing cocaine base may be sentenced to a term of imprisonment of not less than five and not more than forty years. Thus, Mr. Hishaw's 360- month sentence on his § 841 conviction falls within that statutory maximum. Cf. Doggett, 2000 WL 1481160, at *5 (remanding for resentencing of one of the defendants because the district court imposed a sentence in excess of the statutory maximum); United States v. Henderson, 105 F. Supp.2d 523, 535 (S.D. W.Va. 2000) (concluding that "failure to allege the specific drug amount in the indictment is not fatal and does not require dismissal of the criminal action, but instead merely limits punishment to the lowest statutory range provided by the statute").

In addition to the fact that it falls within the statutory maximum for possession of 44.6 grams of a substance containing cocaine base, Mr. Hishaw's sentence was also

properly based upon consideration of drug quantities beyond the offense of conviction. As noted, the government presented evidence at sentencing indicating that Mr. Hishaw had possessed cocaine base on numerous occasions prior to the one charged in count eight. Based on this evidence, the district court adopted the recommendation of the presentence report and found that he should be held responsible for 1857 grams of cocaine base. The consideration of such amounts outside the offense of conviction has been authorized by the Supreme Court. In United States v. Watts, 519 U.S. 148, 157 (1997), the Court held that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." Similar reasoning has been applied when, as here, a sentencing court relies on conduct alleged in counts on which the jury has been unable to reach a verdict. See United States v. Blitz, 151 F.3d 1002, 1014 n.7 (9th Cir.) ("The fact that the jury was unable to reach a verdict on some of the counts did not preclude the sentencing court from considering the conduct underlying those counts."), cert. denied, 525 U.S. 1029 (1998)).

In our view, as long as the defendant's sentence falls within the maximum established by statute, Apprendi does not foreclose consideration of drug quantities beyond the offense of conviction. We agree with the Fifth Circuit that the Supreme Court's opinion "does not clearly resolve whether an enhancement which increases a sentence within the statutory range but which does not increase the sentence beyond that

26

range must be proved to the jury." United States v. Meshack, 225 F.3d 556, 576 (5th Cir. 2000). However, consideration of such drug quantities is a firmly established practice of Guideline sentencing. See United States v. Moore, 130 F.3d 1414, 1416 (10th Cir. 1997) ("It is well-settled in this circuit that a sentencing court may look beyond the offense of conviction and 'may consider quantities of drugs not alleged in calculating a defendant's base offense level, provided the drugs were part of the same course of conduct or common scheme or plan as the offense of conviction.'") (quoting United States v. Roederer, 11 F.3d 973, 978 (10th Cir.1993)). Moreover, in Apprendi, the Supreme Court discussed McMillan v. Pennsylvania, 477 U.S. 79 (1986), a prior decision in which it upheld a state statute authorizing a judge to impose a mandatory minimum sentence upon certain findings made under the preponderance of the evidence standard. The Apprendi court explained that it had not overruled McMillan but instead had "limit[ed] its holding to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict." Apprendi, 120 S. Ct. at 2361 n.13.

Just as in McMillan, the district court here relied on conduct outside the offense of conviction to determine Mr. Hishaw's sentence but nevertheless imposed a sentence within the statutory maximum. See Meshack, 225 F.3d at 576 (stating that "the more limited reading of Apprendi is a more plausible reading of the case"); United States v. Aguayo-Delgado, 220 F.3d 926, 933-34 (8th Cir.2000) ("If the non-jury factual

27

determination only narrows the sentencing judge's discretion within the range already authorized by the offense of conviction, . . . then the governing constitutional standard is provided by McMillan[,] . . . [which] allows the legislature to raise the minimum penalty associated with a crime based on non-jury factual findings, as long as the penalty is within the range specified for the crime for which the defendant was convicted by the jury."). That practice is authorized by established precedent and not forbidden by Apprendi.

Accordingly, we conclude that in light of his admission that he possessed cocaine base and the fact that his sentence fell within the statutory maximum sentence for the drug quantity proved by the government at trial, Mr. Hishaw was not prejudiced by the failure to submit the question of drug quantity to the jury. He has therefore failed to establish that his sentence should be overturned for plain error.[3]

### III. CONCLUSION

For the reasons set forth above, we REVERSE Mr. Hishaw's conviction for violating 18 U.S.C. § 922(g)(1) and AFFIRM his conviction and sentence for violating 21

---

[3] Near the end of his opening brief, Mr. Hishaw argues in conclusory fashion that the district court engaged in improper double counting of drug quantities. Mr. Hishaw does not refer to specific instances of double counting, and, absent a challenge to specific amounts, we discern no error here. As the government notes, the presentence report discounted a total of 13.5 ounces of crack cocaine to avoid the risk of such double counting. See Rec. vol. VII, at ¶ 29.

U.S.C. § 841.