**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 22, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LARRY "MISSISSIPPI" JOHNSON,

Defendant-Appellant.

No. 05-3023

(D. Kansas)

(D.C. No. 04-10104-MLB)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

Larry Johnson, a federal prisoner, was convicted after a jury trial in 2004 of seven

drug distribution and firearms offenses. Mr. Johnson raises various challenges to his

convictions, and for the following reasons, we affirm.

## I. BACKGROUND

In early 2004, undercover federal agent Wes Williamson began to investigate a

group of individuals suspected of selling drugs and guns. Agent Williamson first learned

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

about Mr. Johnson while investigating this operation, which involved one of Mr. Johnson's acquaintances. Rec. vol. III, at 30-32. From February to April of 2004, Agent Williamson made four purchases of cocaine base (crack) from Mr. Johnson. The first, on February 24th, was facilitated by the acquaintance. Agent Williamson purchased approximately half an ounce of crack from Mr. Johnson for $400. *Id.* at 30-34. Two days later, he purchased one ounce of crack from Mr. Johnson. During this second purchase, Agent Williamson had a gun in his car that he had purchased from Mr. Johnson's acquaintance. Mr. Johnson asked Agent Williamson "how much [he wanted] for the firearm." *Id.* at 45.

In mid-April, additional purchases were arranged. On April 14th, Agent Williamson purchased one ounce of crack from Mr. Johnson. During this purchase, he provided Mr. Johnson with a list of firearms that he would sell, since Mr. Johnson had inquired about purchasing a gun during the second February purchase. *Id.* at 55-56. At this meeting, Mr. Johnson told Agent Williamson that he already had a Colt .45. *Id.* vol. II (Government Exhibit 9, tape recording of meeting, 4/14/04, between Agent and Defendant). On April 16th, Agent Williamson again provided Mr. Johnson with a list of firearms for sale. *Id.* vol. III, at 64, 69. On April 20th, Agent Williamson arranged a larger purchase: two and a half ounces of crack in exchange for firearms and cash. *Id.* at 75. Mr. Johnson brought Antoine Washington with him to the pre-determined purchase location, arriving in Mr. Washington's car. *Id.* at 84. Mr. Washington was ultimately charged and tried with Mr. Johnson.

Immediately after the April 20th exchange, Mr. Johnson and Mr. Washington were arrested. Police located a Colt .45 in the car on the backseat floorboard, behind the passenger seat in which Mr. Johnson had been sitting. *Id.* at 170, 176. A subsequent search of Mr. Johnson's house revealed .45 caliber ammunition in a bag that also contained Mr. Johnson's social security card. The ammunition found in the Colt .45 was the same brand as the ammunition located in the bag. *Id.* at 244-46, 282-83.

The government charged Mr. Johnson and Mr. Washington with various drug and firearm offenses. A jury convicted Mr. Johnson of seven counts: conspiracy to distribute cocaine base after a prior felony conviction, in violation of 21 U.S.C. § 846 (count one); distribution of cocaine base after a prior felony conviction, in violation of 21 U.S.C. § 841 (counts two through five); possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1) (count six); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (count seven). The district court sentenced Mr. Johnson to 240 months for counts one through five, and 120 months for count seven, to be served concurrently. The court also imposed a sixty-month sentence on count six, to be served consecutively.

## II. DISCUSSION

On appeal, Mr. Johnson presents various arguments attacking his conviction and sentence. First, he contends the government failed to timely file an information regarding his prior convictions, thereby violating his due process rights and requiring resentencing. Second, he argues that the government did not present sufficient evidence that the

3

substances he sold to Agent Williamson actually contained crack cocaine, thereby obviating his convictions for counts two through six. Third, Mr. Johnson argues that the district court should have dismissed counts one, five, six, and seven because Agent Williamson engaged in outrageous conduct or sentence factor manipulation; alternatively, he contends that whether Agent Williamson's conduct was outrageous was a question that the district court should have submitted to the jury. Finally, Mr. Johnson argues that the government did not present sufficient evidence to support his conviction on count seven. We examine each argument below.

A.    Filing of Information Regarding Prior Convictions

Mr. Johnson first argues that the government did not timely file the information regarding his prior convictions. Filing an information regarding prior convictions permits the district court to apply a sentencing enhancement. 21 U.S.C. § 851. Here, the government filed the information on the morning that jury selection began, prior to *voir dire*. Mr. Johnson argues that the government should have filed the information earlier, and that not doing so violated his due process rights. Whether a sentence imposed violates a defendant's due process rights presents a question of law, which we review *de novo*. *United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1484 (10th Cir. 1994).

In *Gonzalez-Lerma*, we encountered a situation similar to Mr. Johnson's. There, the government filed the information of prior convictions the day before trial, but waited until the morning of trial to serve the defendant's counsel. We held that this constituted timely filing, noting that "the circuits that have considered this issue in the context of jury

4

trials have concluded that filing anytime *before jury selection begins* is sufficient for purposes of 21 U.S.C. § 851. *Id.* at 1484 (emphasis added). We further concluded that § 851 is intended to fulfil the due process requirements "that a defendant receive reasonable notice and opportunity to be heard relative to the recidivist charge." *Id.* at 1485 (internal quotation marks omitted). Thus, the timely filing and service of an information under § 851 is sufficient to satisfy the due process requirements of notice and an opportunity to be heard. *See id.*

Even though he couches his argument in due process terms, rather than as a violation of § 851, Mr. Johnson acknowledges that the case law in our circuit is clearly against him. *See* Aplt's Br. at 15 ("Johnson understands that case law supports the filing of the Information just before *voir dire*."). We see nothing in Mr. Johnson's argument to convince us that his case is substantially different than *Gonzalez-Lerma* and therefore hold that the government timely filed and served the information in compliance with § 851 and Mr. Johnson's due process rights.

B.      Sufficiency of the Evidence: Counts two through six

Mr. Johnson next argues that the government failed to prove that the substance he allegedly distributed contained cocaine base because the expert who testified as to the substance did not explicitly testify "that his opinions were based either upon a reasonable degree of probability or certainty." Aplt's Br. at 16. Therefore, Mr. Johnson contends, the district court erred by not dismissing counts two through six due to insufficient evidence. We review the district court's decision *de novo*. *See United States v. Vallo*,

5

238 F.3d 1242, 1246 (10th Cir. 2001). We must affirm the jury's verdict so long as, viewing the evidence in the light most favorable to the government, a reasonable jury could have found Mr. Johnson guilty. *Id.* at 1247.

To convict Mr. Johnson of the offenses charged in courts two through six, the government was required to prove beyond a reasonable doubt that the substance he distributed contained a detectable amount of cocaine. 21 U.S.C. § 841(a)(1). Scientific evidence is admissible to prove that contention if it is reliable and relevant, and here there was no objection made to the witness's report or proffered testimony on either ground. *See* FED. R. EVID. 702. The government may also use other testimony and circumstantial evidence to show that the substance in question contained cocaine, including:

> evidence of the physical appearance of the substance involved in the transaction, evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, evidence that the substance was used in the same manner as the illicit drug, testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in [her] presence.

*United States v. Sanchez-DeFundora*, 893 F.2d 1173, 1175 (10th Cir. 1990) (internal quotation marks omitted).

Mr. Johnson essentially argues that, no matter how reliable the tests used, and regardless of what the scientific testing shows, if the expert witness does not use the particular phrase "reasonable degree of scientific certainty," then a jury cannot rely upon the expert's testimony or the scientific testimony. He does not cite, nor can we locate,

6

any case that actually requires the use of this phrase. The cases that he does cite are distinguishable and do not address whether an expert must testify to something to a reasonable degree of certainty in order for that evidence to be admissible, relevant, and relied upon by a jury.

Here, the expert testified that he used tests commonly used in the scientific community for the identification of unknown substances. In light of the expert's testimony, as well as the circumstantial evidence identified by the government (the high price of $400 paid for the substance, the code word "z" used to describe an ounce of drugs, the guns present during one of the transactions, and Mr. Johnson referring to the substance as crack cocaine), there was sufficient evidence for a reasonable jury to conclude that Mr. Johnson distributed a substance containing crack cocaine, as alleged in counts two through six.

C.    Outrageous Conduct and Sentence Factor Manipulation: Counts one, five, six and seven

Mr. Johnson next contends that the district court erred by not dismissing counts one, five, six, and seven of the indictment because of the government's outrageous conduct during the course of its undercover investigation. Alternatively, Mr. Johnson asks that his case be remanded for resentencing because the government's undercover investigation constituted sentence factor manipulation, which may justify a downward departure from the guideline range. *See United States v. Lacey*, 86 F.3d 956, 966 (10th Cir. 1996). We examine *de novo* the issue of whether the district court should have

7

dismissed these counts of the indictment because of outrageous conduct. *United States v. Pedraza*, 27 F.3d 1515, 1521 (10th Cir. 1994). As to Mr. Johnson's allegation of sentence factor manipulation, we review the district court's legal conclusions regarding the sentencing guidelines *de novo*, but we examine its factual findings only for clear error. *See Lacey*, 86 F.3d at 962; *Pedraza*, 27 F.3d at 1521. Although there is some question as to whether Mr. Johnson properly preserved these issues with respect to counts one and seven, we need not decide whether to review these arguments with respect to those counts under a plain error standard of review. Even under a *de novo* standard, his arguments fail.

This court has recognized that "'the conduct of law enforcement agents [may be] so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.'" *Lacey*, 86 F.3d at 964 (quoting *United States v. Russell*, 411 U.S. 423, 431-32) (1973)). If "the government's conduct is so shocking, outrageous and intolerable that it offends the universal sense of justice," *Lacey*, 86 F.3d at 964 (quotation marks omitted), then dismissal of the indictment may be warranted.

In *Lacey* we also observed that "we may someday be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would warrant a downward departure from the sentencing guidelines." *Id.* (internal quotation marks omitted). However, we concluded that such a departure was not warranted in light of the facts before us. *Id.*; *see also United States v. Sanchez*, 138 F.3d 1410, 1414 (11th Cir. 1998) (explaining that a sentencing factor manipulation argument

8

"'requires us to consider whether the manipulation inherent in a sting operation, even if insufficiently oppressive to support an entrapment defense, . . . or due process claim, . . . must sometimes be filtered out of the sentencing calculus.'") (quoting *United States v. Connell,* 960 F.2d 191, 194 (1st Cir. 1992)).

According to Mr. Johnson, "in order to avail himself of the protection against sentence factor manipulation, his burden [is] to prove by a preponderance of the evidence that the government engaged in conduct, not sufficiently oppressive to constitute outrageous conduct, but sufficiently oppressive to merit filtering the results of the manipulation from his sentence." Aplt's Br. at 29. Mr. Johnson contends this approach would not conflict with *Lacey*.

We need not examine whether Mr. Johnson's suggestion actually conflicts with our opinion in *Lacey*, or under what circumstances sentence factor manipulation may require relief apart from that available because of outrageous governmental conduct. Even under the less-stringent standard suggested by Mr. Johnson, his argument fails. The government's conduct was neither outrageous nor oppressive, nor was it "designed *solely* to increase the severity of a criminal sentence." *United States v. Maldonado-Montalvo*, 356 F.3d 65, 72 (1st Cir. 2003) (emphasis added). In *Lacey*, agents had attempted to collect evidence to break up an entire drug ring and secure convictions of co-conspirators. 86 F.3d at 965. In those circumstances, we explained that officers are "often justified in increasing the scope of criminal activity in a sting operation, especially when attempting to ensnare those persons higher up on the distribution ladder." *Id.*

The same principle holds true here: the government already knew that others involved in the same drug ring as Mr. Johnson had been involved in selling and/or buying guns. Aplt's Br. at 31. Moreover, although it was a government agent who offered the guns for sale or exchange, Mr. Johnson had previously asked to purchase a gun that was in the agent's backseat during one of the drug sales. Aple's Br. at 15 n.11; Rec. vol. III, at 149. Significantly, on the last purchase that Mr. Johnson argues was improperly set up by the government "for the sole purpose of manipulating the sentence that [Mr.] Johnson might receive," Aplt's Br. at 31, Johnson brought another member of the alleged conspiracy with him. Aple's Br. at 17; Rec. vol. III, at 89. Thus, it was through this final purchase that the government was able to obtain evidence against someone else involved in the illegal activity. *See United States v. Scull*, 321 F.3d 1270, 1276-78 (10th Cir. 2003) (even though government agents could have arrested the defendant after their first contact with him, they continued to engage in drug buys and were able to identify other members of the conspiracy; therefore, their conduct was not targeted solely at the defendant and was not outrageous).

Accordingly, there were legitimate purposes for the government's conduct while engaging Mr. Johnson in further criminal activity. The district court was correct not to dismiss any counts of the indictment, and a remand for resentencing is not warranted.

Mr. Johnson argues in the alternative that the district court should have submitted the question of whether the government's conduct was outrageous to the jury. He recognizes, however, that "it is settled law that the proposition of whether outrageous

10

government conduct exists is a question of law for the court." Aplt's Br. at 33; *see United States v. Gell-Iren*, 146 F.3d 827, 831 (10th Cir. 1998); *see also United States v. Nguyen*, 250 F.3d 643, 645 (8th Cir. 2001) ("Outrageous government conduct is a question of law and is resolved by the court, not the jury."). Therefore, the district court properly refused to submit this question to the jury.

D.      Sufficiency of the Evidence: Count seven

Finally, Mr. Johnson argues that the district court should have dismissed the § 922(g)(1) charge for possession of a firearm by a convicted felon because no reasonable jury could have concluded that he was guilty. Again, we review the district court's decision *de novo,* viewing the evidence in the light most favorable to the government. *Vallo*, 238 F.3d at 1246-47. We affirm if a rational jury could have found Mr. Johnson guilty beyond a reasonable doubt. *Id.* at 1247. "We must not weigh conflicting evidence or consider the credibility of the witnesses, but simply determine whether the evidence, if believed, would establish each element of the crime." *Id.* (internal quotation marks and alteration omitted).

Mr. Johnson points out that the Colt .45 was discovered in Mr. Washington's car and argues that because of this, no rational jury could have found that Mr. Johnson was the person who possessed the firearm. Our opinion in *United States v. Hishaw*, 235 F.3d 565 (10th Cir. 2000), is instructive. There, a gun was discovered under the passenger seat of a car driven by the defendant. The defendant argued that he had neither actual nor constructive possession of the gun, given that he was the driver of the car and not the

11

passenger, and therefore there was insufficient evidence to support the jury's conviction on his issue. The court explained that "in cases of joint occupancy in which the government relies on circumstantial evidence of dominion, control, and knowledge, it must present evidence to show some connection or nexus between the defendant and the firearm or other contraband." *Id.* at 571 (internal quotation marks omitted).

Here, there was a sufficient nexus for the jury to convict Mr. Johnson of possessing the Colt .45 located in Mr. Washington's car. He told the undercover agent that he owned a Colt .45, and a Colt .45 was discovered on the back passenger-side floorboard of Mr. Washington's car, near where Mr. Johnson had been sitting. Moreover, .45 caliber ammunition was found in a bag at Mr. Johnson's house that also contained Mr. Johnson's social security card. Finally, the ammunition found in the Colt .45 and the ammunition found in the bag were the same brands.

### III. CONCLUSION

Accordingly, we AFFIRM Mr. Johnson's convictions.

Entered for the Court,


Robert H. Henry
Circuit Judge

12