FILED
United States Court of Appeals
Tenth Circuit

October 16, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SAMUEL ALLEN JACKSON,

Defendant - Appellant.

No. 13-7062
(D.C. No. 6:12-CR-00096-JHP-1)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH**, **SEYMOUR** and **PHILLIPS**, Circuit Judges

Samuel Allen Jackson conditionally pled guilty to possessing with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Mr. Jackson reserved his right to appeal the district court's denial of his motion to suppress evidence. We affirm.

On August 14, 2012, Agents Derek Brown and Rodney Derryberry of the District 16 District Attorney's Drug Task Force were driving near the Choctaw

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, or collateral estoppel. It may be cited for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Travel Plaza, a casino in Poteau, Oklahoma, when they observed a blue Chevrolet pickup truck they suspected belonged to Mr. Jackson.[1] After running the license plate, they confirmed he owned the vehicle. Agent Brown had previously received several reports indicating Mr. Jackson was distributing narcotics in the Poteau area and that narcotics were regularly distributed at the casino. The agents therefore set up surveillance in the parking lot near Mr. Jackson's vehicle, where they had an unobstructed view of both his truck and the casino.

The agents observed Mr. Jackson exit the casino. Agent Derryberry, who had previous dealings with Mr. Jackson, confirmed his identity. Mr. Jackson pulled his vehicle to the side of the casino, and a man approached it a short time later. The man, later identified as Lewis Ping, appeared nervous and walked to and from the casino to Mr. Jackson's vehicle twice while on his cell phone before making contact with Mr. Jackson. The agents then observed Mr. Ping exchange money with Mr. Jackson for an item passed by Mr. Jackson through the driver's side window, after which Mr. Ping walked away. Based on their training and experience, the agents believed they had witnessed a hand-to-hand drug transaction.

Agent Brown approached Mr. Ping, taking him to the ground. Simultaneously, Agent Derryberry directed Mr. Jackson to exit his vehicle, at

_____

[1] These facts are taken from the findings made by the magistrate judge after an evidentiary hearing, which the district court adopted. They are based primarily on Agent Brown's testimony at the hearing.

which time he observed in plain view, in a compartment on the driver's side door, several baseball or golf ball size bags of what both agents believed to be "crystal meth."[2]  Rec., vol. II at 19-21.  Also, Mr. Ping admitted to Agent Brown that he had purchased methamphetamine and swallowed it.

Mr. Jackson filed a motion to suppress the methamphetamine, contending the agents' actions amounted to an illegal investigative detention.  The magistrate judge who presided over the suppression hearing issued a Report and Recommendation, finding "[t]he officers' suspicion that [Mr.] Jackson was engaging in criminal activity was more than reasonable under the circumstances" and concluding the evidence should not be suppressed.  *Id.* at 28.  The district court adopted the Report and Recommendation.  Mr. Jackson then pled guilty pursuant to a written plea agreement in which he waived his appellate and post-conviction rights but reserved his right to appeal the district court's denial of his motion to suppress.

In reviewing the district court's denial of a motion to suppress, "we review de novo the district court's ultimate determination of reasonableness under the Fourth Amendment, but we accept the district court's factual findings unless they are clearly erroneous and we view the evidence in the light most favorable to the prevailing party."  *United States v. Ruiz*, 664 F.3d 833, 838 (10th Cir. 2012).

The Fourth Amendment protects individuals from "unreasonable searches

---

[2] Lab analysis subsequently confirmed their belief.

and seizures." U.S. Const. amend. IV. "An investigative, non-consensual detention constitutes a seizure under the Fourth Amendment." *United States v. Briggs*, 720 F.3d 1281, 1284 (10th Cir. 2013). "[P]olice can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). We consider the "totality of the circumstances" when "reviewing an investigatory stop for reasonable suspicion" to determine "whether the detaining officer ha[d] a particularized and objective basis for suspecting legal wrongdoing." *United States v. Neff*, 681 F.3d 1134, 1138 (10th Cir. 2012) (internal quotation marks and citation omitted). Although this requires the officer's detention to be based on "something more than an inchoate and unparticularized suspicion or hunch . . . the level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause." *Sokolow*, 490 U.S. at 7 (same).

On appeal, Mr. Jackson argues the officers did not have reasonable suspicion to detain him and therefore the seizure of methamphetamine from his car and his arrest were unreasonable under the Fourth Amendment. He relies primarily on *Terry* and *United States v. Davis*, 94 F.3d 1465 (10th Cir. 1996), contending that his presence in an area known for criminal activity and the hand-to-hand exchange of money for something with Mr. Ping did not rise to the level

of reasonable suspicion required for a lawful *Terry* stop. We disagree.

In *Davis*, 94 F.3d at 1468, the government relied on the following four facts for detaining Mr. Davis: he exited from a car parked "outside a known criminal establishment"; he made eye contact with officers, looked away, and then refused to stop when directed; he had his hands in his pocket; and the officers knew he had a criminal record. We held that the officers' reasons for stopping the defendant, standing alone or taken together, did not amount to "the necessary 'reasonable, articulable suspicion' to justify their detention of Davis." *Id.* at 1470.

Here, however, the agents witnessed suspicious conduct, including what appeared to be a hand-to-hand drug transaction in an area known for drug trafficking by a person they had reason to believe was a drug dealer. *See United States v. Hishaw*, 235 F.3d 565, 570 (10th Cir. 2000) (officer observed defendant making hand-to-hand contact outside apartment being used to distribute drugs). Viewing the totality of the circumstances, we agree with the magistrate judge that there was reasonable suspicion to believe Mr. Jackson was engaged in criminal activity. Accordingly, we AFFIRM.

ENTERED FOR THE COURT

Stephanie K. Seymour
Circuit Judge

-5-